Thomas Forbes as he is the Personal Representative of the Estate of George Forbes
v.
Gregory Trucking Company, Inc. et. al.
C.A. No. 3:17 – CV 30174-MAP

# UNITED STATES DISTRICT COURT
# IN THE WESTERN DIVISION OF MASSACHUSETTS
# SPRINGFIELD, MA.

Civil Action No.17 CV  30174

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**THOMAS FORBES, as he is the
Personal Representative of the
Estate of GEORGE J. FORBES,**
                    **PLAINTIFF**
**v.**

**GREGORY TRUCKING COMPANY,
INC., WILEY LENUE HOOKS, JR.,
GREGORY LEASING COMPANY, INC.
BSG LEASING, INC.; and
B&C TIMBERS LLC.,**
                    **DEFENDANTS**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S MOTION IN LIMINE NO. 1
## REQUEST FOR ATTORNEY-CONDUCTED PANEL VOIR DIRE

George (Joe) Forbes was killed when his pick-up truck was struck by a tractor trailer truck which ran a red light.  The tractor trailer truck was owned by Gregory Trucking Co. Inc., (Gregory) and operated by Gregory's employee - Wiley Lenue Hooks, Jr. (Hooks).   It is alleged Gregory negligently hired Hooks who had a pending criminal charge for driving while impaired (his 5th) when Gregory hired Hooks; and that Gregory was negligent in training and supervising Hooks, as well as negligently entrusting the driver with a tractor trailer truck.

PX~MIL~001

Thomas Forbes as he is the Personal Representative of the Estate of George Forbes

v.

Gregory Trucking Company, Inc. et. al.

C.A. No. 3:17 – CV 30174-MAP

1   Now comes the Plaintiff, Thomas Forbes, as he is the Personal
2   Representative of the Estate of George J. Forbes, by and through counsel,
3   and moves that this Honorable Court allow attorney-conducted panel *voir*
4   *dire* of prospective jurors on case specific issues.

5
6
7   A. **ARGUMENT**

8   The Sixth Amendment of the U.S. Constitution provides that "the accused
9   shall enjoy the right to …trial by an impartial jury."  The right to jury
10  impartiality extends to civil cases.  In *McDonough Power Equipment, Inc. v.*
11  *Greenwood et. al.* 464 U.S. 548, 554 (1984), a civil action for damages based
12  on product liability, the Supreme Court said:

13
14      One touchstone of a fair trial is an impartial trier of fact –
15      "a jury capable and willing to decide the case solely on
16      the evidence before it." *Smith v. Phillips*, 455 U.S. 209,
17      217 (1982).  Voir dire examination serves to protect
18      that right by exposing possible biases, both known and
19      unknown, on the part of potential jurors.  Demonstrated
20      bias in response to questions on voir dire may result in
21      a jurors being excused for cause; hints of bias not sufficient
22      to warrant challenge for cause may assist parties in
23      exercising their peremptory challenges.
24

25  Additionally, as the U.S. Supreme Court has long recognized, "[v]oir Dire is
26  a singularly important means of safeguarding the right to an impartial jury."
27  *Sampson v. U.S.,* 724 F.3d 150, 163 (1st Cir. 2013).  "A probing Voir Dire
28  examination is '[t]he best way to ensure that jurors do not harbor biases for
29  or against the parties.'"  *Id.* at 163-164, *quoting Correia v. Fitzgerald*, 354
30  F.3d 47, 52 (1st Cir. 2003).  "This goal, however, is not easy to achieve:  a

Thomas Forbes as he is the Personal Representative of the Estate of George Forbes

v.

Gregory Trucking Company, Inc. et. al.

C.A. No. 3:17 – CV 30174-MAP

person who harbors a bias may not appreciate it and, in any event, may be reluctant to admit her lack of objectivity."  *Id.* at 164 *citing* <u>McDonough Power Equip v. Greenwood,</u> 464 U.S. 548, 554 (1984); <u>Crawford v. United States,</u> 292 U.S. 183, 196 (1909). "As the Supreme Court explained over a century ago, '[b]ias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence.'"  *Id.* quoting <u>Crawford,</u> 212 U.S. at 196.

In support hereof, the Plaintiff states that attorney-conducted panel *voir dire* should be allowed because attorney conducted panel voir dire is the most efficient and effective manner of performing voir dire, leads to a more open and honest discussion of the subject areas to be addressed in the case because of the group setting and more comfortable physical environment, and juror participation in this format enhances the jury experience and therefore the level of interaction, as discussed more fully below.

1. **Panel Voir Dire Takes Less Time Than Individual Voir Dire.**

    By its very nature, panel voir dire should take less time than individual voir dire.  With individual voir dire, every prospective juror is called to the sidebar and asked the same questions.  With panel voir dire, due to the group format, duplication is avoided and not every question needs to be asked of every prospective juror due to the dynamics of the group process as orchestrated by the attorney.

PX~MIL~003

Thomas Forbes as he is the Personal Representative of the Estate of George Forbes

v.

Gregory Trucking Company, Inc. et. al.

C.A. No. 3:17 – CV 30174-MAP

2. **Panel Voir Dire Leads To a More Open and Honest Discussion of The Pertinent Subject Areas.**

Plaintiff understands that the goal of voir dire is not to indoctrinate or persuade the jury, but to identify jurors that have opinions, biases (implicit and explicit), or feelings that might interfere with their ability to base their decisions on the law and evidence in the case.

Plaintiff further submits that attorney conducted voir dire of the entire panel creates the atmosphere necessary for a full and frank discussion of the issues. The logistics of panel voir dire, seated, as part of a group, as opposed to standing between numerous attorneys as the sole target of questioning, with a judge peering down, fosters a more comfortable environment conducive to a more open conversation. The conversational approach permitted by the group process facilitates the revelation of information necessary to seating a fair and impartial jury. Reluctant jurors are more likely to listen and to engage in the conversation after hearing other jurors give their point of view without being judged or criticized for that view. By underscoring that there are no right or wrong answers, just honest answers, a juror is likely to be more open and honest.

Still another danger of Judge-only conducted voir dire involves a recognized difference between the way jurors react to questions from the court and how they react to attorney questioning. Research shows that potential jurors respond more candidly and are less likely to give

Thomas Forbes as he is the Personal Representative of the Estate of George Forbes

v.

Gregory Trucking Company, Inc. et. al.

C.A. No. 3:17 – CV 30174-MAP

merely socially desirable answers to questions from lawyers than from Judges.  Susan E. Jones, Judge v. Attorney Conducted Voir Dire: An Empirical Investigation of Jury candor, 11 LAW & HUM. BEHAV. 131 (1987).

For voir dire to be effective in identifying bias or lack of impartiality, juror candor and sufficient information must be obtained to disclose grounds for challenges for cause and to facilitate intelligent exercise of peremptory challenges.  That goal is best achieved by gathering information about subjects relevant to the kind of case and facts involved.

3. **Panel voir dire is associated with a more positive jury experience due to early and extensive involvement in the process.**

Enhancement of the jury experience was one of the goals of the American Jury Project which resulted in the promulgation of the ABA Principles for Juries and Jury Trials.  Involving a jury as a group is likely to result in a more positive experience due to the early group format involvement.

Speaking up in front of fellow jurors also prepares potential jurors for their ultimate task of fact finders.

Thomas Forbes as he is the Personal Representative of the Estate of George Forbes

v.

Gregory Trucking Company, Inc. et. al.

C.A. No. 3:17 - CV 30174-MAP

**4. Counsel is intimately familiar with the case in a way in which a Judge could not be familiar.**

It is important to recognize a trial Judge likely knows far less about a given case at the time of voir dire than the lawyers who have prepared the case for months or years.  Busy though diligent Judges cannot be expected at the outset of trial to appreciate all the significant matters on which jurors should be examined for bias.  As stated by the fifth Circuit Court of Appeals in _U.S. v. Ledee_, 549 F.2d 990, 993 (5th Cir. 1977):

> We must acknowledge that voir dire examination in both civil and criminal cases has little meaning if it is not conducted by counsel for the parties.  A Judge cannot have the same grasp of the facts, the complexities of the case and nuances as the trial attorneys entrusted with the preparation of the case.  The court does not know the strength and weaknesses of each litigant's case.  Justice requires that each lawyer be given an opportunity to ferret out possible bias and prejudice of which the juror himself may be unaware until certain facts are revealed.

**5. Panel Voir Dire is gaining acclaim**

The trend locally and nationally is toward greater _voir dire_. Massachusetts State Courts initiated it in 2014  and its acceptance has been acclaimed. On 12   July 2016 a final report to the SJC was presented. (Attached hereto as Exhibit A.) Some of the noteworthy findings in the report are:

Thomas Forbes as he is the Personal Representative of the Estate of George Forbes

v.

Gregory Trucking Company, Inc. et. al.

C.A. No. 3:17 - CV 30174-MAP

Jurors do not appear to be offended by attorney questions, there is every reason to extend it to the other trial courts. (@ p.6)

26% of cause challenges occurred during attorney participation after the Judge had finished his/her questions. (@p.7)

62% of these challenges were allowed (@p. 7)

Recommendations: The committee recommends attorney participation in voir dire be encouraged in the BMC, Housing Court, District Court and Juvenile Court.

## B. **PROPOSED TIME LIMIT FOR PANEL VOIR DIRE**

Most Courts don't impose and time limit on voir dire.  Rather, the rules usually allow for the trial judge to impose "reasonable restrictions on the… time…and shall so inform the parties before empanelment begins."

Plaintiff is requesting 45 minutes for the first panel voir dire and 30 minutes for the second.

## C. **PROPOSED AREAS OF INQUIRY**

The Plaintiff has questions he would like the judge to ask are attached hereto as **Exhibit B.**  The questions Plaintiff would like his counsel to inquire about in panel voir dire are attached hereto as **Exhibit C. )**

Questions that should generally be approved are questions that:

PX~MIL~007

A. Seek factual information about the prospective juror's background and experience pertinent to the issues expected to arise in the case;

B. May reveal preconceptions or biases relating to the identity of the parties or the nature of the claims or issues expected to arise in the case;

C. inquire into the prospective jurors' willingness and ability to accept and apply pertinent legal principles as instructed;  and

D. are meant to elicit information on subjects that controlling authority has identified as preferred subjects of inquiry, even if absolutely not required.

Follow-up questions would seek to elicit further information about or explanations of responses of jurors to these topic areas.  The objective of Plaintiff's counsel's inquiry is to allow jurors to comfortably express their preconceived notions and beliefs about the topics reference above.  The Plaintiff contends that reasonable time to explore each of these critical subject areas is required to root out bias and prejudice.

**WHEREFORE,** the Plaintiff requests that this Honorable Court:

1. Allow attorney-conducted panel *voir dire* with sufficient time to allow for questioning with respect to the subject areas as set forth herein; or

Thomas Forbes as he is the Personal Representative of the Estate of George Forbes

v.

Gregory Trucking Company, Inc. et. al.

C.A. No. 3:17 – CV 30174-MAP

2. In the alternative, should the Court deny the Plaintiff's request for attorney conducted panel *voir dire*, the Plaintiff requests the Court permit counsel for the parties and the Judge to conduct individual *voir dire* of prospective jurors at a table while seated concerning all subject areas set forth herein.

**Dated:**

THOMAS FORBES, as he is the
Personal Representative of the
Estate of GEORGE J. FORBES

By: */s/ Dino M. Tangredi*

**Dino M. Tangredi**
**BBO No. 567928**
**The Miles Pratt House**
**106 Mount Auburn Street**
**Watertown, MA. 02472**
**T:      617-926-0012**
**F:      617.926.0016**
**masslaw@dinotangredi.com**

(70103/limine-1-voir-dire)

1       **UNITED STATES DISTRICT COURT**

2    **IN THE WESTERN DIVISION OF MASSACHUSETTS**

3              **SPRINGFIELD, MA.**

4

5                 **Civil Action No.17 CV  30174**

6

7  **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

8  **THOMAS FORBES, as he is the**

9  **Personal Representative of the**

10  **Estate of GEORGE J. FORBES,**

11            **PLAINTIFF**

12

13  **v.**

14

15  **GREGORY TRUCKING COMPANY,**

16  **INC., WILEY LENUE HOOKS, JR.,**

17  **GREGORY LEASING COMPANY, INC.**

18  **BSG LEASING, INC.;**

19  **B&C TIMBERS LLC.;  and**

20  **BB&S ACQUISITION CORPORATION,**

21          **DEFENDANTS**

22  **\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

23

24

25

26

27          **EXHIBIT  A**

28

29  **FINAL REPORT OF THE SJC AND**

30  **LAWYERS WEEKLY ARTICLE**

31

32

33

Page 1

PX~MIL~010

Statement regarding Best Practices for Jury Selection

August 3, 2016

The Justices of the Supreme Judicial Court have endorsed the attached "Best Practices for Jury Selection." The Justices encourage trial judges and attorneys to follow and, where appropriate, participate in training in these practices.

The Best Practices were proposed by the Supreme Judicial Court's Committee on Juror Voir Dire. Chief Justice Gants convened the Committee in September 2014 to recommend how jury selection might be enhanced throughout the trial court, including how best to implement Chapter 254 of the Acts of 2014. That statute granted attorneys and self-represented parties the right to question potential jurors in all Superior Court trials, effective February 2, 2015.

The Committee was chaired by SJC Justice Barbara A. Lenk and included judges from the five trial court departments that conduct jury trials, representatives from bar associations, prosecutors, defense attorneys, and academics with expertise in jury selection.[1] The Justices expressed their appreciation to the Committee and in particular to the chairs of the Committee's Working Groups: District Court Judge Jennifer L.

---

[1] The Members of the Committee included: BMC Judge David J. Breen; Professor R. Michael Cassidy, Boston College Law School; John W. Cavanaugh, Office of Jury Commissioner; Superior Court Chief Justice Judith Fabricant; BMC Judge Serge Georges, Jr.; District Court Judge Jennifer L. Ginsburg; Superior Court Judges Maynard M. Kirpalani, Peter M. Lauriat, Robert Rufo, and Bertha Josephson; Assistant District Attorney Mark Lee, Massachusetts District Attorney's Association; Carolyn I. McGowan, Esq., Committee for Public Counsel Services; Juvenile Court Judge Lawrence Moniz; Douglas K. Sheff, Massachusetts Bar Association; Mark. D. Smith, Boston Bar Association; Housing Court Judge Jeffrey M. Winik, and Commissioner Pamela Wood, Office of Jury Commissioner.

Ginsburg, and Superior Court Judges Bertha Josephson (retired), Peter M. Lauriat, and Robert C. Rufo.

The Committee's Final Report to the Justices includes an overview of the Committee's findings as well as individual reports of the four working groups which looked in depth at (1) implementation of Chapter 254 in the Superior Court; (2) jury selection in the Boston Municipal, District, Housing, and Juvenile Courts; (3) the Pilot Project in which Superior Court judges volunteered to allow attorneys to employ the panel voir dire method; and (4) education and training for judges and attorneys regarding attorney participation in voir dire.

The Committee's Final Report, which was submitted on July 12, 2016, is available on the Court's website

## BEST PRACTICES FOR JURY SELECTION

### Endorsed by the Justices of the Supreme Judicial Court

### July 20, 2016

1. <u>Meaningful Pretrial Communications as to Empanelment</u>:  In the Superior Court's experience, providing an opportunity for judges and the parties to discuss empanelment in depth before trial can result in an efficient and effective process. The Supreme Judicial Court's Committee on Juror Voir Dire (Committee) recognizes the difficulty of adhering to a principle of meaningful pretrial conferencing in all trial court departments, especially where judges and prosecutors are often not assigned to trial cases until the last minute.

A judge's intended empanelment procedures should be communicated to the parties in each case.  If possible, a pretrial conference should be scheduled close in time to the trial date, or in any event prior to empanelment.  At that conference, the judge and the attorneys should be prepared to discuss the procedures the judge will employ, including: the details of the case description that will be provided to the venire; the extent to which the judge will give a pre-charge on significant legal principles, the nature of the judge's intended voir dire of jurors; the nature of any attorney participation in voir dire; the number of alternates to be seated; the number of peremptory challenges to be allowed; and, the order and timing of the parties' assertions of challenges for cause and peremptory challenges in relation to the seating of venire members in the jury box.  Judges should encourage attorneys to attempt to reach agreement before trial, if possible, regarding the above matters.

Judges are encouraged to set forth in writing their standard empanelment practices, particularly with respect to attorney participation in voir dire, and to provide that guidance to the parties before trial.

In more complicated cases where attorneys anticipate requesting substantial participation in voir dire, it could be helpful if the trial judge were specially assigned, where feasible, before trial, so a conference concerning empanelment

1

PX~MIL~013

could be held before the trial date.

2. <u>Written Motion Practice as to Empanelment</u>:  Parties wishing to make proposals regarding empanelment procedures, including as to attorney participation in voir dire, should make such proposals by written motion *in limine* filed prior to trial. Written motions should be filed with respect to voir dire topics and legal-principle instructions which the party seeks the court to approve.   Such motions should alert the judge to any areas where the parties agree.  If proposed instructions to the venire are lengthy, the moving party is encouraged to provide the judge with an electronic version of its proposals. Where the parties do not reach agreement, the judge should consider motions and proposals filed by any party.

3. <u>Clarity with respect to the Number of Peremptory Challenges</u>:  Rules of procedure govern the number of peremptory challenges to which each party is entitled.   If requested by a party, a judge should consider exercising discretion to grant additional peremptory challenges in cases that are complex or that involve highly sensitive issues.  A judge should always state on the record prior to empanelment the number of peremptory challenges that will be available to each party.

4. <u>Consideration of Supplemental Juror Questionnaires in Appropriate Cases</u>:  In complex cases, cases involving highly charged or sensitive issues, and other appropriate cases, a judge may consider the use of written supplemental juror questionnaires.  In appropriate cases, the judge should invite the parties to propose such questionnaires well before the trial date.  Attorneys seeking approval of supplemental questionnaires should file a motion *in limine* proposing procedures for the dissemination, completion, collection, and use of the questionnaires.  If possible, the moving party should provide the judge an electronic version of its proposals.  A judge considering use of a supplemental questionnaire should discuss the mechanics with the court officers assigned to the jury assembly room.

5. <u>Individual Voir Dire of Each Prospective Juror</u>:  Speaking individually to each potential juror at least once is critical to a judge's threshold inquiry into

2

qualifications and excuses for cause.  The Committee's surveys demonstrated that most judges already conduct some individual voir dire with each potential juror – either always or often. As required by statute, inquiry about responses to Confidential Juror Questionnaires must be done on an individual basis.  G. L. c. 234A, § 23.  Jurors answering affirmatively to any question of the full venire have long been brought to sidebar for follow-up.  Case law requires individual voir dire in certain criminal trials, depending on the race of defendants and alleged victims and the nature of the charges.  From these experiences, judges and attorneys have recognized that such voir dire, even if limited in length and scope, frequently reveals important issues concerning language ability, mental health status, comprehension, or other impediments to jury service that would not have been observed without personal contact with the juror.  That contact also permits jurors to raise private or embarrassing concerns that they otherwise might not disclose.

6.  <u>Allowance of Attorney Participation in Voir Dire</u>:  If one or more of the parties request attorney participation in voir dire, some form of attorney voir dire should ordinarily be allowed.  Attorneys often have information about the facts and potential legal issues in a case which have not been disclosed to the judge before trial.  Therefore, attorney participation may be necessary to reveal potential bias.[2] Research suggests that potential jurors may respond more candidly to questions posed by attorneys than those posed by judges, because of the vast social-status difference often felt by jurors facing judicial questioning.[3] Judges also maintain

---

[2]  See, e.g., Hon. Gregory E. Mize (ret.), Paula Hannaford-Agor, J.D. & Nicole L. Waters, Ph.D., for the National Center for State Courts and the State Justice Institute, *The State-of-the-States Survey of Jury Improvement Efforts: A Compendium Report*, April 2007, at 28 ("[A]ttorneys are generally more knowledgeable about the nuances of their cases and thus are better suited to formulate questions on those issues than judges.") (last accessed April 11, 2016:  http://www.ncsc-jurystudies.org/~/media/Microsites/Files/CJS/SOS/SOSCompendiumFinal.ashx)

[3]  <u>Id</u>. ("The balance between judge-conducted and attorney-conducted voir dire is important for several reasons.  Empirical research supports the contention that juror responses to attorney questions are generally more candid because jurors are less intimidated and less likely to respond to voir dire questions with socially desirable

3

discretion to impose reasonable restrictions on the conduct, length, and subject matters of such voir dire.  A judge should ordinarily permit attorneys, subject to the judge's supervision, to question jurors directly, either individually or by a "panel" or other group method.[4]  Attorney participation should include at least a reasonable and meaningful opportunity for the attorneys to ask follow-up questions concerning juror responses to written questionnaires and the judge's questions.  Voir dire should be "sufficient to disclose grounds for challenges for cause and to facilitate intelligent exercise of peremptory challenges."[5]

7.  <u>Voir Dire Directed at Bias</u>:  Trial judges should recognize the importance of identifying bias – explicit and implicit - in all cases where a party, a significant

---

answers") (citing Susan E. Jones, *Judge versus Attorney-Conducted Voir Dire*, 11 L. & HUMAN BEHAV. 131 (1987)).

[4]  The Committee considered whether to recommend a particular form of attorney voir dire.  In particular, it considered whether to recommend the use of exclusively individual voir dire by attorneys, or the Pilot Project model of "panel" voir dire, or some other form of group voir dire.  The consensus was that individual trial judges should have the benefit of the Superior Court judges' experiences, which have been wide-ranging in terms of mechanics, and that it is a best practice, in effect, to consider carefully the two forms widely used now in the Superior Court, in light of the particulars of the case to be tried, the requests of the attorneys involved, the experience level of the attorneys involved, and the time and jurors available for empanelment.  The two methods most commonly used in the Superior Court since February 2015 have been, consistent with that court's Standing Order 1-15:  (a) attorney-conducted <u>individual</u> voir dire that follows the judge's own questioning of each individual juror, and (b) <u>panel</u> voir dire, which involves questioning after the jury box is full of jurors seated upon the conclusion of the judge's own individual voir dire, and any attorney voir dire that has been deemed by the court necessary to conduct individually.  In the latter context, the size of the "panel" questioned in group format is the size of the jury box.  In jury-of-six trials (in the District Court, the BMC, and delinquency proceedings in the Juvenile Court), where venire size tends to be small (e.g., 15 to 18 jurors), some form of expanded panel voir dire might be appropriate and efficient.  As the Superior Court protocol recognizes the ability of attorneys to conduct effective panel voir dire with groups of 14 to 16 jurors, it would make sense for a judge seating a jury of six to effectively and efficiently employ a similar protocol to that used in the Pilot Project, but expand the "panel" to similar size.  This would require consultation with court personnel and counsel and might not be possible if juror responses made from outside the bar area cannot be properly recorded.

[5]  ABA Principle for Juries and Jury Trials 11(B)(3) (2005).

4

witness, or an attorney may be subject to such bias. Where requested by a party, a judge should conduct or permit attorneys to conduct voir dire directed at identifying such bias. Jurors, like all members of society, may have biases – explicit or implicit - towards persons whom they identify as having characteristics or group associations that are different from their own, or about which they otherwise have prejudicial beliefs.[6] While such bias may be difficult to uncover, judges and attorneys can and should make efforts to do so in all cases where an identifiable bias will potentially impact juror reactions to a significant participant or issue in the trial. Of special note is that while individual voir dire has long been required by case law in a discrete subset of particularly serious "interracial" criminal cases, bias may impact the fairness of *any* trial in which potential bias is implicated.

8. <u>Meaningful Instructions to the Venire</u>: Jurors should be provided instructions by the judge that promote fair and effective voir dire and contribute to the judge's and the attorneys' efforts to identify potential bias. The judge should explain the role and purpose of voir dire, emphasizing the importance of candor and honesty. Jurors should be advised of the purpose of the Confidential Juror Questionnaire.

---

[6] This topic, for example with respect to implicit racial bias, has been the subject of extensive research and analysis. See, e.g., Justin D. Levinson, <u>Forgotten Racial Equality: Implicit Bias, Decisionmaking, and Misremembering</u>, 57 Duke L.J. 345 (2007) (judges and jurors); Jerry Kang et. al., <u>Implicit Bias in the Courtroom</u>, 59 UCLA L. Rev. 1124 (2012); Justin D. Levinson et. al., <u>Guilty by Implicit Racial Bias: The Guilty/Not Guilty Implicit Association Test</u>, 8 Ohio St. J. Crim. L. 187 (2010) (study confirmed hypothesis that study participants held strong associations between "black" and "guilty," relative to "white" and "guilty," and implicit associations predicted the way mock jurors evaluated ambiguous evidence); Samuel R. Sommers, <u>Race and the Decision-Making of Juries</u>, 12 Legal & Criminological Psychol. 171, 177-78 (2007) (archival and observational studies using behavioral measures generally find that race does influence jury decision-making); Tara Mitchell, et al., <u>Racial Bias in Mock Juror Decision-Making: A Meta-Analytic Review of Defendant Treatment</u>, 29 Law and Hum. Behav. 621, 627-28 (2005) (meta-analysis of thirty-four mock jury studies involving over 7,000 participants revealed a statistically significant association between defendants' race and verdicts, with mock jurors less likely to vote to convict a same-race defendant than a defendant of a different race); Jennifer L. Eberhardt et al., <u>Looking Deathworthy: Perceived Stereotypicality of Black Defendants Predicts Capital-Sentencing Outcomes</u>, 17 Psychol. Sci. 383 (2006).

PX~MIL~017

how it will be used, and who will have access to the information.  Further, the judge should consider giving a "pre-charge" at the beginning of empanelment that provides venire members a meaningful description of the case and, where requested, brief instruction on the most significant claims, charges or legal principles to the extent such instruction is necessary for relevant voir dire.  The judge should consult with the attorneys as to a neutral way to frame these issues.  The parties should assist in this process by proposing pre-charge language prior to trial.

9.  <u>Allowance of Time for Meaningful Participation in Jury Selection</u>:  All empanelment participants should have sufficient time to reflect with care on juror responses to voir dire.  The process should be neither unnecessarily lengthy nor unreasonably expedited.  Attention to juror dignity and respect requires that jurors have a meaningful opportunity to reflect before responding to voir dire, including the judge's questions of the full venire   Before questioning the venire, the judge should encourage jurors to take time to think carefully about the questions and their responses, and questions should be posed slowly enough for jurors to have time to do so.

Attorneys should be given sufficient time to reflect with care on the juror responses to voir dire.  The judge should ensure that parties receive the Confidential Juror Questionnaires and any supplemental questionnaires in time to permit adequate review of the materials before empanelment.  Following voir dire, the judge should allow sufficient time for attorneys to have meaningful communications with their clients and co-counsel regarding the information obtained during the process, including potential for-cause issues that may have arisen and the potential exercise of peremptory challenges.

10.  <u>Consideration of Alternatives to Individual Voir Dire at Sidebar</u>:  When practicable, the judge should conduct individual voir dire of the prospective jurors at a location comfortable for the jurors and conducive to candor and

6

PX~MIL~018

confidentiality, such as with each juror and all participants sitting at counsel table, or with the juror on the witness stand.  In making this determination, the judge may consider, among other factors, the nature of the case, the anticipated length of individual voir dire, any physical impediments to the parties or attorneys standing at length at sidebar, security issues, and the configuration of the courtroom and the courthouse.

Adapted from the Supreme Judicial Court's Committee on Juror Voir Dire
Final Report to the Justices

Submitted July 12, 2016

7

PX~MIL~020

# MASSACHUSETTS LAWYERS WEEKLY

Volume 48
Issue No. 49
December 9, 2019

## OPINION

# Attorney-conducted panel voir dire is here

By Kenneth J. Fishman
and Marc L. Breakstone



JUDGE KENNETH J. FISHMAN    MARC L. BREAKSTONE

Three years after the adoption of Superior Court Rule 6 on attorney-conducted panel voir dire, changes are starting to take hold.

A recent survey by the Flaschner Judicial Institute found that 75 percent of Superior Court judges allow lawyer-conducted panel voir dire. The survey results were released at the Oct. 24 Panel Voir Dire Bench-Bar Workshop co-sponsored by Flaschner and the major civil and criminal trial bar organization in Massachusetts.

The program featured bench and bar panelists who echoed the conclusion from the final report of the Supreme Judicial Court Committee on Juror Voir Dire that "the consensus is that [attorney participation in voir dire] has improved the process of jury selection. As a result, judges and attorneys should have greater confidence that the jurors who are ultimately empaneled are more likely to be impartial."

Several veteran trial judges, (including co author Fishman) reflected on their experiences with attorney panel voir dire over the past three years. All the judges who participated in the program in its preparatory stage, speaking on the panel, or presiding over mock panel voir dires (Kathe M. Tuttman, Fishman, Maynard M. Kirpalani, Douglas H. Wilkins and Joshua I. Wall) have acknowledged the following important truth: Judges' fears about attorney abuse of panel voir dire have not materialized.

They agreed that lawyers usually respect the boundaries of Rule 6. Lawyers have stayed within the bounds of permissible subjects and generally avoid questioning jurors about sensitive or confidential information. When they stray, judges easily curtail lawyer line-stepping with cautionary comments from the bench. Finally, lawyers are not attempting to use panel questioning to indoctrinate or persuade jurors.

Judges and lawyers alike report that attorney panel voir dire enhances juror candor and increases transparency. Jurors readily volunteer more information when they know their opinions matter. Hearing fellow jurors volunteer personal beliefs encourages otherwise reluctant jurors to reveal their own strongly held opinions that might otherwise not get revealed. The net result is the disclosure of otherwise hidden biases, which produces more successful challenges for cause.

The group dynamic of panel voir dire creates a safe and comfortable medium for expression. Panel voir dire can and should be a conversation, not an interrogation. The group dynamic fosters the most effective means of identifying potentially disqualifying bias. It also affords counsel an opportunity to engage with and establish rapport with jurors before the formal and detached trial proceedings.

As important, panel voir dire also enhances the experience for all citizens who appear for jury duty. Jurors uniformly report that they enjoy the give and take of lawyer questioning in open court. They are not offended by attorney questions. Venire members in the jury box rarely ask to go to sidebar to answer sensitive questions.

Potential jurors become engaged in the process as they listen attentively to the conversation between counsel and jurors in the box. Panel voir dire allows for greater transparency for the parties and the public. It allows civil parties and criminal defendants to hear what would otherwise be discussed at sidebar.

It allows pro se parties to participate in voir dire while mitigating potential security concerns or interpersonal interactions with potential jurors.

Indeed, in the criminal courtroom, defense attorneys should consider whether they are providing constitutionally guaranteed effective assistance of counsel if they are not utilizing this methodology in selecting juries.

If the goal of jury empanelment is to level the playing

### All on the bench-bar panel agreed that both trial lawyers and judges have steep learning curves ahead.

field by identifying jurors with attitudes or beliefs that may interfere with their ability to fairly evaluate the evidence, attorney panel voir dire best facilitates that outcome. Lawyers know their cases better than judges, who often know little more than the brief description in the joint pre-trial memo. Jurors tend to be more candid with lawyers during panel voir dire in open court than at sidebar with black-robed judges sitting up high.

Most important, open-ended questions during panel voir dire generally elicit better response about juror attitudes upon which counsel can make more informed cause and peremptory challenges.

Similarly, judges gain insights upon which better rulings on for-cause challenges can be made.

At the same time, attorney panel voir dire is usually a more expeditious means of identifying potentially disqualifying bias than judge-conducted individual voir dire.

Some Superior Court judges still prefer a method of individual voir dire in which the judge asks every venire member the same close-ended questions that seek a "yes" or "no" response. The lawyers may be permitted to ask follow-up or other questions. The vast majority of time spent in this approach is with the judge or the lawyers repeating the same questions over and over. This process



I allow lawyer-conducted panel voir dire:

52 reponses

25%

38.5%

36.5%

● In all types of cases
● In some types of cases
○ never

SOURCE: FLASCHNER JUDICIAL INSTITUTE SURVEY

can take hours and produces little useful information and few insights. Meanwhile, the rest of the venire finds itself waiting in bored silence.

Conversely, during attorney panel voir dire, a question or topic can be stated once to the entire venire (including venire members not in the jury box), with the remainder of the time on that topic dedicated to juror responses. The goal of empanelment should be to have jurors, not the judge or counsel, doing most of the talking.

After a topic is discussed during panel voir dire in open court, venire members who get called to fill open seats in the jury box will have already thought about the issue and be primed to respond. Counsel need only mention the topic and ask the new juror for his or her thoughts on the matter.

All on the bench-bar panel agreed that both trial lawyers and judges have steep learning curves ahead. Conducting an effective and efficient panel voir dire is unlike anything else in a trial lawyer's repertoire. It is the opposite of advocacy; it is a process of illumination and revelation.

Similarly, judges who may be accustomed to running jury selection need to turn the questioning reins over to the lawyers and largely observe and referee the proceedings.

Interestingly, several judges noted that many lawyers do not request panel voir dire, while a number of lawyers attending the program complained that many judges do not permit it or will only allow it if both sides agree to it.

The bottom line is that we have come a long way in our jury selection approaches in the commonwealth, but we still have a long way to go. As judges and counsel gain experience and expertise, panel voir dire should soon become the universal method of jury selection.

*Judge Kenneth J. Fishman sits on the Superior Court. Marc L. Breakstone is a founding partner at Breakstone White & Gluck, P.C. in Boston.*

Reprinted with permission from                    ston, MA 02108, (617) 451-7300 © 2019

PX~MIL~022

**RESPONSES TO SURVEY REGARDING JURY VOIR DIRE PRACTICES
IN THE SUPERIOR COURT
53 RESPONSES
October 22, 2019**

1. I allow lawyer-conducted panel voir dire:



2. I allow lawyer-conducted panel voir dire:



3. I impose a strict time limit (per panel, per side) during attorney panel voir dire:



4. I have found that lawyers adhere to the Superior Court Rule 6 limitations on questions and topics during lawyer-conducted panel voir dire:



5. I allow attorney-conducted questioning during individual voir dire:



- all of the time
- some of the time
- never

6. I allow supplemental juror questionnaires:





- all of the time
- some of the time
- never
- never been asked to use one

PX~MIL~026

# UNITED STATES DISTRICT COURT
# IN THE WESTERN DIVISION OF MASSACHUSETTS
# SPRINGFIELD, MA.

Civil Action No.17 CV  30174

*************************************

THOMAS FORBES, as he is the
Personal Representative of the
Estate of GEORGE J. FORBES,
                    PLAINTIFF

v.

GREGORY TRUCKING COMPANY,
INC., WILEY LENUE HOOKS, JR.,
GREGORY LEASING COMPANY, INC.
BSG LEASING, INC.;
B&C TIMBERS LLC.;  and
BB&S ACQUISITION CORPORATION,
                    DEFENDANTS
*************************************

# EXHIBIT  B

# QUESTIONS FOR THE JUDGE TO ASK
# PROSPECTIVE JURORS

PX~MIL~027

Page 2

PX~MIL~028

1

2   **PLAINTIFF REQUESTS THE JUDGE ASK THE**

3   **PROSPECTIVE JURORS THE FOLLOWING**

4   **QUESTIONS:**

5

6

7   1. **Preponderance of The Evidence.**  The standard of proof in a civil

8      case like this one is that a plaintiff must prove his case by a

9      preponderance of the evidence.  This is a less stringent standard

10     than is applied in a criminal case, where the prosecution must prove

11     its case beyond a reasonable doubt.  By contrast, in a civil case

12     such as this one, the plaintiff is not required to prove his case

13     beyond a reasonable doubt.  In a civil case, the party bearing the

14     burden of proof meets the burden when he shows it to be true by a

15     preponderance of the evidence.  A preponderance of the evidence

16     means something is more likely than not.

17

18     Does anyone believe this standard makes the case too easy for the

19     Plaintiff and too hard on the Defendants?

20

21   2. **Caps on Damages**.  Do you believe there should be limits on how

22     much a person can receive for injuries caused by another's

23     negligence?

24

25

26   3. **Experience with Law Suits**. Have you or a family member  ever

27     been a party in a law suit,  that is have you or a close family

28     member ever been sued or sued somebody else?

4. **Business Owner**.

   A. Do you or a close family member own a business presently or
   at any time in the past?

   B. Do you or a close family member earn money from a small
   business

5. **Death in the family.**  This type of case is called a wrongful death
   case.  Have you experienced a death that may make it difficult for
   you to decide this type of case?

6. **Car Crash.**   Have you or a family member ever been in a car
   crash.

7. **Punitive Damages.**  In this case the Plaintiff is allowed by law to
   ask for punitive damages. The purposes of punitive damages
   include condemnation and deterrence,[1] and a proper allowance of
   punitive damage ~~award~~ is one that is "sufficient…to send a clear
   message to the defendants to condemn its reprehensible
   behavior…"[2]

---

1 *Aleo v. SLB Toys USA, Inc.* 466 Mass. 398, 412 (2013) (citing *Dartt v. Browning-Ferris Indus., Inc.,*
427 Mass. 1, 17 (1998)) (quoting *Bain v. City of Springfield,* 424 Mass. 758, 767 (1997)).

2 *Aleo v. SLB Toys USA, Inc.* 466 Mass. 398, 412 (2013) (citing *Clifton v. Mass. Bay Transp. Auth,* 445
Mass. 611, 624 (20050)) see Zabin & Connolly. "The New Wrongful Death Act in Massachusetts Steps
into the Twentieth Century" , 58 *Mass L.Q.* 345, 369 (1973-1974) ("punitive damages…are awarded…to
punish the defendant and make an example of him")

Punitive damages are to be ~~awarded~~ allowed in addition to the compensatory damages on which I will instruct you later. Punitive damages are ~~awarded~~ allowed to punish the defendants and deter future wrongdoing, not to compensate particularly harmed individuals.

Will you have any trouble in considering punitive damages?

**8. Pain & Suffering.** You will be asked to compensate the estate of George Forbes for any conscious pain & suffering that George Forbes may have experienced before passing away. Is there any reason why you may not be able to allow for the conscious pain & suffering George Forbes may have had before he died?

9. **Driving an Automobile**. Who does <u>not </u>drive a car?

10. **Trucking Related Income**.

   A. Does anyone earn money from the trucking industry?

   B. Is anyone related to someone who earns money from The trucking industry?

   C. Is anyone here a member of the Teamsters Union? Or have a family member in the Teamsters Union?

   D. Is anyone a member of any Union?

1

2

3

4

5

6

7

8          This Page Intentionally Left Blank

9

10

11

12

13

14

15

16

17

18

19

20

1       UNITED STATES DISTRICT COURT
2   **IN THE WESTERN DIVISION OF MASSACHUSETTS**
3              **SPRINGFIELD, MA.**
4
5                           Civil Action No.17 CV  30174
6
7   ************************************
8   **THOMAS FORBES, as he is the**
9   **Personal Representative of the**
10  **Estate of GEORGE J. FORBES,**
11              **PLAINTIFF**
12
13  v.
14
15  **GREGORY TRUCKING COMPANY,**
16  **INC., WILEY LENUE HOOKS, JR.,**
17  **GREGORY LEASING COMPANY, INC.**
18  **BSG LEASING, INC.;**
19  **B&C TIMBERS LLC.;  and**
20  **BB&S ACQUISITION CORPORATION,**
21              **DEFENDANTS**
22  ************************************
23
24
25
26
27          **EXHIBIT  C**
28
29  **TOPICS FOR PANEL VOIR DIRE  BY**
30       **PLAINTIFF'S COUNSEL**
31

1.  Preponderance of the Evidence standard; *(Willingness and ability to accept and apply pertinent legal principles)*

**Some people think an injured person should prove their case by a standard of "more likely than not"…**

**Other people believe that an injured person should prove their case by a standard of "beyond a reasonable doubt"…**

**Which way do you lien?**

2.  Limits on damages. *(Willingness and ability to accept and apply pertinent legal principles; Seek factual information about the prospective juror's background and experience pertinent to the issues expected to arise in the case; may reveal preconceptions or biases relating to the identity of the parties or the nature of the claims or issues expected to arise at trial)*

**A. Do you believe there should be limits on how much you can allow in your verdict?**

**B. Some people believe the law should NOT put a limit on a jury as to the amount it can allow an injured person in a law suit…**

**Other people believe the law should put limits on how much a jury can allow an injured person.**

**Which way do you lien?**

**C. In this case one of the Ds is an individual, if the evidence shows that individual to be responsible for the injuries to the Plaintiff, could you allow a**

1    **substantial amount of money – (hundreds of**
2    **thousands or millions)  against an individual**
3    **person without regard for the D's ability to pay it**
4    **or the effect it might have on the defendant**
5    **personally.**
6
7
8
9
10
11    3. Experience with law suits. *(seek factual information about*
12    *the prospective juror's background and experience  pertinent*
13    *to the issues expected to arise at trial.)*
14
15    **Have you ever been a party in a law suit,  that is,**
16    **have you ever been sued or sued somebody else?**
17
18    **Please tell me a little about that experience?**
19
20
21    *4.* Frivolous Law suits; *(may reveal  preconceptions or biases*
22    *relating to the identity of the parties or the nature of the*
23    *claims or issues expected to arise at trial.)*
24
25
26    **A. Has anyone heard the phrase "frivolous law suit?"**
27
28    **What does that phrase mean?**
29
30    **Who has an example?**
31
32    **Do you feel that a case in which a person is**
33    **injured in a car crash  is a "frivolous law suit?"**
34
35
36

1  **B. Some people believe it's ok to bring a law suit if a**
2  **person is hurt when someone breaks the safety**
3  **rules…**
4  **Other people believe there are too many**
5  **law suits…**
6
7  **Which way do you lien?**
8
9
10 *5.* Business   Bias.   *(seek   factual   information   about   the*
11 *prospective juror's background and experience   pertinent to*
12 *the issues expected to arise at trial.)*
13
14 **Who is a business owner or whose family owns a**
15 **business;**
16
17 **What kind of business?**
18 **Where?**
19 **Has the business ever been involved in a law suit?**
20
21
22
23
24 6. Employment   History. *(seek   factual   information   about   the*
25 *prospective juror's background and experience   pertinent to*
26 *the issues expected to arise at trial.)*
27
28 **Are you employed?**
29 **How so?**
30 **What was the process like to get your position?**

7. Racial/Age/Gender/Clothing        Bias.        *(may reveal preconceptions or biases relating to the identity of the parties or the nature of the claims or issues expected to arise at trial; Seek factual information about the prospective juror's background and experience pertinent to the issues expected to arise in the case)*

   **A. Plaintiff requests permission to pass around to the jurors the photo below and ask: Now, I'm going to ask you a question, and I want you to answer it to yourself, silently.  If you did not know either of these individuals, which one would you say was the convicted federal felon who went to prison?**



8. Car Crash Bias/fall bias. *(seek factual information about the prospective juror's background and experience pertinent to the issues expected to arise at trial.)*

   **Who has been involved in a car crash?**
   **[Follow-up questions as necessary.]**

Px~ MIL~36A

9. Jurors as voice of the Community ( *Juror video/willingness and ability to accept and apply pertinent legal principles*)

    **A. I went on the Fed. Court's web site for jurors to see what you might see if you went on the web site.  I saw the following quote from Barbara Jordan – a Representative  in Congress from Texas in the 70's and 80s,  she said:**

    **We live in community**
    **And each is not an atom of self interest.**
    **What each one of us does**
    **Has an impact on the rest of us.**

        **What does that mean to you?**

    **B. It is said that as jurors you will "serve as the voice of the community."**

        **What does that mean to you?**

    **C. Serving on a jury forces a person to make up their mind and  declare themselves about something. Sometimes people don't like to do that because it can be unpleasant.**

        **How would you feel about that?**

        **Can you do it?**

PX~MIL~36B

10.   Enforcement of safety rules/Rules of the road; *(Willingness and ability to accept and apply pertinent legal principles)*

  A. **Some people believe that safety rules/rules of the road must be enforced at all times and under all circumstances…**

     **Other people believe that its ok to do the best you can when it comes to safety rules/rules of the road…**

         **Which way do you lien?**

  B. **Some people believe that it's up to each and every driver to follow ALL the rules of the road …**

     **Other people believe that ALL the rules of the road DO NOT need to be followed ALL the time…**

         **Which way do you lien?**

*11.* Compensation for injuries such as Pain and Suffering or emotional distress. *(willingness and ability to accept and apply pertinent legal principles)*

  A. **How do you feel about allowing money damages for a person's pain and suffering?**

     **For emotional distress?**

  B. **Please tell me the difficulty you would have in allowing money damages for emotional distress / mental pain & suffering if the evidence warranted it?**

PX~MIL~ 36 C

**C. Some people believe that pain and suffering is something an injured person should be compensated for…**

**Other people believe that allowing money for pain and suffering is not proper…**
**Which way do you lien?**

12.    What is your passion? *(may reveal  preconceptions or biases   relating to the identity of the parties or the nature of the claims  or issues expected to arise at trial.)*

**Who has heard the expression "Life, Liberty and the pursuit of happiness" ( Dec. of Independ.)**

**Where does it come from?**

**So how do you pursue happiness, in other words, what is your passion?**

13.    Late admission to liability Bias. *(Willingness and ability to accept and apply pertinent legal principles; may reveal preconceptions or biases  relating to the identity of the parties or the nature of the claims or issues expected to arise at trial.)*

**Soon you will hear from the D and they will admit fault for their actions in this case.**

PX~MIL~ 36 D

1                **Some believe that even though the D has admitted fault**

2                **they are NOT entitled to a discount on the amount of**

3                **your verdict.**

4

5                      **Others believe they should get a discount**

6                      **on the amount you decide.**

7

8                            **Which way do you lien?**

9

10

11

12    14. Bias. *(May reveal preconceptions or biases relating to the*

13        *identity of the parties or the nature of the claims or issues*

14        *expected to arise at trial.)*

15

16        **I would not be a good Judge in a pie baking contest between**

17        **an apple pie and lemon meringue pie contest because I do not**

18        **like lemon meringue pie. …**

19

20

21

22    15.   Attorney suggesting an amount to the jury in closing

23        argument.  *(Willingness and ability to accept and apply*

24        *pertinent legal principles; may reveal preconceptions or*

25        *biases relating to the identity of the parties or the nature of*

26        *the claims or issues expected to arise at trial.))*

27

28        **At the end of this trial, if you find in favor of Mr/Ms._____,**

29        **You will be asked to allow him/her money damages. It has**

30        **been my experience in trying cases for 25 years now, that the**

*Px~MIL~36 E*

1    jury expects the attorney to suggest an amount of money to
2    them.  Do you think this would be helpful? And would you
3    like me to do that?

4
5
6
7    16.    Taking an oath and what it means. *(Willingness and*
8    *ability to accept and apply pertinent legal principles; may*
9    *reveal   preconceptions or biases   relating to the identity of*
10   *the parties or the nature of the claims or issues expected to*
11   *arise at trial.))*

12
13   Who has ever taken an oath?  Marriage?  Military? Notary?
14   Public office? Citizenship?  Boy/girl scouts witness?

15
16   What does it mean to you?     Why?

17
18
19   *17.*Checklists. *(seek factual information about the prospective*
20   *juror's background and experience pertinent to the issues*
21   *expected to arise at trial.)*

22
23   Does anyone use a check list?
24   How?
25   Why?

26

18. Distracted Driving. . *(seek factual information about the prospective juror's background and experience pertinent to the issues expected to arise at trial.)*

**Who has heard the phrase distracted driving?**

**What is it?**

**Is it just texting?**

**Is it a big deal?**

**What % of crashes involve D.D.?**

**Are we as a society doing enough about DD**

19. Punitive Damages *(Willingness and ability to accept and apply pertinent legal principles; may reveal preconceptions or biases relating to the identity of the parties or the nature of the claims or issues expected to arise at trial.)*

**In this case we are alleging that the defendant's were grossly negligent.   If we prove that to you,    we will ask you for punitive damages.**

**Who has heard of punitive damages?**

**What have you heard?**

**If the evidence proved gross negligence,  would you be able to provide Punitive Damages?**

**Does anyone believe they may not be able to allow Punitive damages against a corporation if the evidence justifies it?**

Px~Mike 36G

1
2
3       **20.   Wrongful Death Damages under the statute.**
4             *(Willingness and ability to accept and apply pertinent legal*
5             *principles; may reveal preconceptions or biases relating to*
6             *the identity of the parties or the nature of the claims or*
7             *issues expected to arise at trial.)*
8
9             **Conscious suffering**
10            **Services**
11            **Protection**
12            **Loss of net income**
13            **Care & Assistance**
14            **Society**
15            **Companionship**
16            **Comfort**
17            **Guidance**
18            **Counsel & Advice**
19            **Funeral & Burial expenses**
20
21
22
23
24
25
26
27

*Px~M1L~36 H*