UNITED STATES DISTRICT COURT
IN THE WESTERN DIVISION OF MASSACHUSETTS
SPRINGFIELD, MA.

Civil Action No.17 CV 30174

*****************************************

THOMAS FORBES, as he is the
Personal Representative of the
Estate of GEORGE J. FORBES,
           PLAINTIFF

v.

GREGORY TRUCKING COMPANY,
INC., WILEY LENUE HOOKS, JR.,
GREGORY LEASING COMPANY, INC.
BSG LEASING, INC.; and
B&C TIMBERS LLC.,
           DEFENDANTS

*******************************************

## PLAINTIFF'S MOTION IN LIMINE NO. 2
## PROHIBIT THE USE OF A VIOLATION OF THE SEAT BELT LAW.

George (Joe) Forbes was killed when his pick-up truck was struck by a tractor trailer truck which ran a red light. The tractor trailer truck was owned by Gregory Trucking Co. Inc., (Gregory) and operated by Gregory's employee - Wiley Lenue Hooks, Jr. (Hooks). It is alleged Gregory negligently hired Hooks who had a pending criminal charge for driving while impaired (his 5th) when Gregory hired Hooks; and that Gregory was negligent in training and supervising Hooks, as well as negligently entrusting the driver with a tractor trailer truck.

1  Now comes the Plaintiff, Thomas Forbes, as he is the Personal
2  Representative of the Estate of George J. Forbes, by and through counsel,
3  and moves that this Honorable Court *NOT* allow any questioning, testimony,
4  mentioning, or argument that the Plaintiff was not wearing a seat belt.
5
6  **ARGUMENT**

7  Plaintiff expects the defense to reveal to the jury that the deceased was not
8  wearing his seat belt at the time of the fatal crash as evidence of his
9  comparative negligence. MGL c. 90 §13A states that seat belts must be worn
10 by occupants in a vehicle over the age of sixteen, with noted exceptions.
11 However, nothing in the statute addresses the admissibility of the failure to
12 wear a seat belt.
13
14 Any evidence that the Plaintiff was not wearing his seat belt at the time of
15 the crash is insufficient to submit to the jury on the issue of comparative
16 negligence unless the defense is prepared to offer expert testimony revealing
17 that the failure to wear a seat belt was causally related to the Plaintiff's death.
18 *Shahzade v. C.J. Mabardy, Inc.*, 411 Mass. 788, 796 (1992). (Attached).
19
20 The defense has not disclosed any such expert.
21
22 **WHEREFORE**, because the defense cannot present any evidence on
23 causation tending to show that all or some of the Plaintiff's injuries would
24 have been averted or minimized if he had been wearing a seatbelt, it is
25 improper to allow the defense to mention it, solicit testimony about it or
26 argue it.

**Dated:**

THOMAS FORBES, as he is the
Personal Representative of the
Estate of GEORGE J. FORBES

By: /s/ *Dino M. Tangredi*

**Dino M. Tangredi**
**BBO No. 567928**
**The Miles Pratt House**
**106 Mount Auburn Street**
**Watertown, MA. 02472**
**T:  617-926-0012**
**F:  617.926.0016**
**masslaw@dinotangredi.com**

70103/limine-2-seat belt

PX~MIL~040

☑ Display Cross-Citations

2011 Mass. App. Div. 290 / 453 Mass. 116 / 414 Mass. 450 / 68 Mass. App. Ct. 208 / 45 Mass. App. Ct. 643 / 39 Mass. App. Ct. 133

Supreme Judicial Court/Massachusetts Appeals Court

```
Citation:        411 Mass. 788
Parties:         ANN M. SHAHZADE vs. C.J. MABARDY, INC.
County:          Middlesex
Hearing Date:    October 7, 1991
Decision Date:   February 13, 1992
Judges:          LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.
```

Certain remarks and rulings by the judge during the trial of a personal
   injury action did not demonstrate his bias in favor of the plaintiff and
   were not prejudicial to the defendant. [790-792] At the trial of a personal
injury action, the judge erred by interposing a
   lengthy comment, during his charge to the jury, emphasizing various
   factors that could detract from the reliability of the plaintiff's
   hospital records; however, where there were no significant
   inconsistencies, helpful to the defendant, between the hospital records
   and the plaintiff's testimony, this court concluded that the error was
   harmless. [792-795] Evidence at the trial of a personal injury action arising
from a motor
   vehicle accident did not raise a jury issue as to whether the plaintiff
   was negligent in stopping her automobile suddenly. [795-796] At the trial of a
personal injury action arising from a motor vehicle
   accident, the judge properly declined to instruct the jury that they
   could consider, on the issue of comparative negligence, the plaintiff's
   own testimony that she was not wearing her seat belt at the time of the
   accident, in the absence of any evidence that her injuries would have
   been less severe if she had been wearing a seat belt. [796-797]

   CIVIL ACTION commenced in the Superior Court Department on January 22, 1986.
   The case was tried before James L. Vallely, J.
   The Supreme Judicial Court on its own initiative transferred the case from the
Appeals Court.
   Richard T. Corbett for the defendant.
   Richard d'A. Belin for the plaintiff.

   LIACOS, C.J. This is a personal injury action arising out of an automobile
accident involving the plaintiff, Ann M. Shahzade, and an employee of the defendant
corporation,

Page 789

C.J. Mabardy, Inc.[1] The case was tried to a jury which returned a verdict for the
plaintiff in the amount of $300,000. After a motion for a new trial was denied, the
defendant appealed to the Appeals Court. We transferred the case to this court on
our own motion. The defendant argues the trial judge failed to conduct an impartial
trial, and that he erred in refusing to instruct the jury "on the issue of
plaintiff's comparative negligence, both as a result of her sudden stopping of her
vehicle and her failure to use a seat belt." We affirm.
   In November, 1984, the plaintiff was stopped in a line of traffic approaching a
stop sign at the intersection of Cross Street and Lake Street in Belmont, when her
automobile was hit from behind by a pickup truck owned by the defendant and driven
by the defendant's employee, Joseph Murphy. The parties differ slightly in their
accounts of the events immediately preceding the accident. The plaintiff testified
that she had stopped and waited in the line of traffic before she was hit
unexpectedly from behind. Murphy testified that he and the plaintiff both had been
stopped in the line of traffic, t[hat the line] proceeded and that he followed,

PX~MIL~041

that the plaintiff then stopped "suddenly, unexpected[ly]," and that Murphy did not have enough time to stop. Murphy estimated that he was travelling fifteen miles an hour when he struck the plaintiff's automobile.

The plaintiff, who was not wearing a seat belt,[2] was thrown forward in her automobile and her head hit the steering wheel. The plaintiff was shaken but was able to drive her automobile home. Once home, she called a friend to take her to the emergency department at Choate-Symmes Hospital, where she was examined, treated, and released.

---

[1] The driver of the truck, Joseph Murphy, originally was named as an additional defendant but was dropped from the case at the close of the evidence.
[2] The plaintiff testified that her automobile was equipped with a shoulder strap harness belt but that she was not wearing the restraint at the time of the accident.

Page 790

The next morning the plaintiff noticed that her left eye was red. She made an appointment with an ophthamologist, Dr. Paul Barsam, who determined that the plaintiff had sustained an ocular contusion, or a blow to the eye, which resulted in "edema, or swelling, like a blister" in the back of her left eye. The plaintiff subsequently developed complications in both eyes, including retinal detachment in her right eye. By the time of trial in 1989, the plaintiff had lost 40% of the vision in her right eye. Barsam testified that the plaintiff was likely to experience a total loss of vision in her right eye and a partial loss of vision in her left eye. He also testified that, in his opinion, the plaintiff's eye problems were due to the injury she sustained in the accident.[3]

1. The Judge's Remarks During Trial.

The defendant contends that certain remarks and rulings by the judge were prejudicial to the defense and demonstrate bias. We perceive no bias or prejudice. We address each claim of error in turn.

a. During jury empanelment the judge instructed the potential jurors that the case involved an automobile accident and that the "principal injury in this case is the fact that the [plaintiff] suffered a very severe, apparently a very severe injury to her eye and has trouble with her eyes resulting from this accident." Defense counsel promptly objected to the judge's characterization of the plaintiff's injury as "severe." The ensuing colloquy between the judge and defense counsel in the presence of the venire is set out in the margin.[4]

---

[3] There was evidence of injuries suffered by the plaintiff to her neck and back, as well as of emotional distress, which also would have warranted the jury's assessment of damages in the amount of $300,000. In any event, the defendant does not argue the award to have been excessive.

[4] THE JUDGE: "Well, she is alleging that it is severe."
DEFENSE COUNSEL: "She is alleging that, your honor. As long as you make that --"

THE JUDGE: "That is all I am saying. I am not exclaiming to the jury. I haven't heard the questions. I don't know anything about the case, other than she is claiming an injury to her eyes."
DEFENSE COUNSEL: "I understand that, your Honor."
THE JUDGE: "At any rate, she is claiming that she received personal injuries as a result of this accident; and that is what this claim, this cause of action is about, trying to recover for those personal injuries."

Page 791

We think it clear that the judge's statement regarding the extent of the plaintiff's injuries reflects inadvertence rather than bias. Moreover, the error, if any, was corrected by the judge's subsequent statement that he knew nothing about the facts of the case and that he simply was characterizing the plaintiff's allegations. See Runels v. Lowel[l] ss. 466, 472-473 (1945); Bernasconi

PX~MIL~042
sll.gvpi.net/document.php?id=sjcapp:411_mass_788&type=h     2/6

v. Bassi, 261 Mass. 26, 27-28 (1927). In light of his corrective language, as well as the judge's later charge to the jury that the plaintiff bore the burden of proving that she was in fact injured in the accident, we do not believe that the defendant was prejudiced in any manner by the judge's remark.

b. During his cross-examination of the plaintiff, the defendant introduced in evidence certain photographs depicting the relatively minor damage that the plaintiff's automobile had sustained in the accident. Defense counsel then asked the judge if the photographs could be "published" to the jury. The defendant now contends that the judge's response, which is set out in the margin,[5] reflects an "obvious attempt" by the judge to subject defense counsel to ridicule.

The judge's statements appear only to have been intended to clarify, for himself or for the jury, what it was the defendant was requesting. Moreover, even if we were to construe the judge's remarks as sarcastic, we do not perceive any prejudice to the defendant. Compare Federal Nat'l Bank v. O'Keefe, 267 Mass. 75, 82-83 (1929), and Adams v. Yellow Cab Corp., 12 Mass. App. Ct. 931 (1981) (judge responded to counsel's request for a side bar conference by asking, "What do you want to hide from the jury?"), with Olson v. Ela, 8 Mass. App. Ct 165, 168-169 (1979) (judge's remarks,

---

[5] DEFENSE COUNSEL: "May the photographs be published to the jury?"
THE JUDGE: "What?"
DEFENSE COUNSEL: "May the photographs be published to the jury?"
THE JUDGE: "You mean, do you want to hand them around to the jury?"
DEFENSE COUNSEL: "Yes."
THE JUDGE: "No. They will have them later."

Page 792

although better left unsaid, did not so prejudice plaintiff as to require reversal; judge's subsequent comments and charge cured error, if any). The judge's comment did not reflect on the merits of the defendant's case, and, taken on its own, the comment hardly served to hold defense counsel up to such scorn and ridicule that his effectiveness as an advocate was impeded.

c. The defendant contends that the judge demonstrated bias by permitting the plaintiff's expert witness to give "long winded, nonresponsive answers" over defense counsel's objections. On direct, the witness's answers were given without a single objection. The record reveals that the witness's answers were neither "long winded" nor "nonresponsive." The judge once admonished defense counsel on cross-examination not to interrupt the witness before his answers were complete. On redirect, defense counsel interrupted the witness's response on one occasion and was again told to let the witness complete his answer. The answer was appropriate, and there was no further objection or motion to strike. These actions hardly reflect bias on the part of the judge. Additionally, since defense counsel did not move to strike the alleged nonresponsive answers once they were completed, the defendant's present claims of error are not preserved for appeal. See Grant v. Golden, 360 Mass. 849 (1971); Commonwealth v. Patalano, 254 Mass. 69, 74-75 (1925).

d. The defendant contends that the trial judge implicitly adopted the testimony of Dr. Barsam, the plaintiff's expert witness, by specifically referring to Dr. Barsam's testimony in his charge to the jury. This contention is without merit. Although the judge did refer specifically to Dr. Barsam's testimony, the judge did not reveal his opinion of that testimony. See G. L. c. 231, Section 81 (1990 ed.).

e. During the course of trial, a number of the plaintiff's hospital records were introduced in evidence, including records from the emergency department at Choate-Symmes Hospital where the plaintiff was treated on the night of the accident. In his cross-examination of the plaintiff, and in his closing argument, defense counsel attempted to demonstrate

Page 793

that the plaintiff's trial testimony as to the nature and extent of her injuries was inconsistent with, or was not corroborated by, the entries in some of these records. The judge commented at length on the hospital records in his charge to the jury, the

PX~MIL~043

relevant portion of which is set out in the margin.[6] The defendant now argues that the judge's comments impugned

---

[6] The judge stated to the jury:

"A number of records, hospital records, are involved in this case. For many years statutes have allowed the introduction of the hospital records in a trial of a case.

"Now, I am also sure all of you are aware of the word, `hearsay,' meaning indirect, secondhand. A person can't -- one witness can't say, `Well, I talked with another witness, and that witness said,' and have whatever that witness said in the case. You can't do that. That is hearsay. And it is not permitted in the trial of a case, because it is not reliable.

"There has got to be a transcription from what the witness said the person said, rather than having the person himself here to be examined. That is hearsay. Hospital records are pure, unadulterated hearsay.

"Obviously, if a person is trying to establish that the plaintiff, as the plaintiff is required to establish, not only that she was injured, but the extent to which she was injured, and she goes to a hospital or he goes to a hospital, they are going to have to rely on the people that are in the hospital to make a record of what transpired.

"And most of you, I am sure, if not all of you, at some time have been in a hospital. . . . And they have gone into emergency rooms in the hospital, and you know how those operate. . . . [A]nd you have been treated in the hospital and you have been handled by nurses and doctors and interns and residents; and you know how things work.

"The resident, for instance, might have 20 patients that he is busy taking care of all day; and then at the end of the shift, he sits down and he is going to write out the record that occurs of all the histories that happened that day. And he tries to remember as best he can what he was told and what he observed and so forth. He puts it in the record. So do the nurses.

"Now, the law permits these records to be offered into evidence as evidence as to the truth of the matters that are contained in them, because the doctor and the nurse or whoever it is in the hospital that is writing these things down has no interest in the litigation, other than they are doing their job as they are required to do in the hospital.

"But, whether or not it is accurate depends upon the individual who receives the information and is putting it down in the record. And if it is in conflict with other evidence, then you can very well find that the statement in the hospital record is not accurate.

"Things in the hospital record are not written in stone. They are subject to all the foibles of human nature, mistakes. Some doctors or nurses are overtired or they misunderstood the statement that was made to them, whatever it is. They are in the hospital record. You examine them.

"And if you think that they are accurate and true, then adopt them. Otherwise, ignore them as you would the testimony of a witness [whom] you did not find credible."

Page 794

the reliability of the hospital records and reflected bias on the part of the judge.

It is beyond question that "parties to an action are entitled to a fair and unprejudiced submission of the testimony and the issues to the jury, without indication of the opinion of the judge upon the weight or effect of evidence or as to who should prevail upon any issue where a material fact is left in doubt by the testimony." Federal Nat'l Bank v. O'Keefe, supra at 83. G. L. c. 231, Section 81. In the present case, we think the judge failed to adhere to these principles when he emphasized various factors that could detract from the accuracy of the hospital records at issue. The judge's statements that hospital records are "pure, unadulterated hearsay," that hearsay is unreliable, and that emergency room records are particularly suspect because of the manner in which emergency rooms are operated created an impression that, in the judge's opinion, any inconsistencies between the plaintiff's testimony and the hospital records readily could be explained by the fact that the hospital records were inaccurate. The judge's further instruction that, "if you think that [the rec_____ e and true, then adopt them" did

PX~MIL~044

not remedy the error, as it did nothing to dispel the impression that the judge himself thought the records inaccurate. Thus, while we note that the judge's intention may have been to impress upon the jury that they were not required to accept the records as accurate simply because the records had been admitted under an exception to the hearsay rule, the instruction given by the judge was not neutral. Therefore it was erroneous.

Although we conclude that the judge erred, we do not believe that the defendant was prejudiced so that a reversal of the judgment is required. Our review of the record reveals that there are no significant inconsistencies, helpful to the defendant, between the hospital records and the plaintiff's testimony.
Page 795

For example, defense counsel sought to show that the emergency room records did not corroborate the plaintiff's testimony that emergency room personnel had referred her to an ophthalmologist. This alleged inconsistency was not a material issue at trial, however. Moreover, it was undisputed that, the day after the accident, the plaintiff noticed redness in her eye and did in fact seek treatment from an ophthalmologist. Similarly, the other alleged inconsistencies relied on by the defendant either were equally minor or are not supported by the record. Thus, because the hospital records contained nothing helpful to the defendant's case, and because the plaintiff's version of the extent of her injuries was corroborated by a plentitude of evidence and expert and lay testimony, we conclude that the error in the judge's charge was harmless.

2. The Plaintiff's Comparative Negligence.

The defendant also contends that the judge erred in refusing to instruct the jury that, in reaching their verdict, they could consider whether the plaintiff's own negligence contributed to her injuries. The defendant contends that Murphy's testimony that the plaintiff stopped her automobile "suddenly, unexpected[ly]," and the plaintiff's own testimony that she was not wearing her seat belt at the time of the accident, each gave rise to an issue of comparative negligence that warranted submission to the jury. We disagree.

a. The plaintiff's alleged sudden stopping of her automobile. Although the defendant presented testimony that the plaintiff stopped her automobile suddenly, the defendant did not present evidence that she did so negligently. In order to establish that the plaintiff was negligent, the defendant was required to demonstrate that the plaintiff did not act as a reasonably prudent person would have acted in all the circumstances. Gilhooley v. Star Market Co., 400 Mass. 205, 206-207 (1987). Goldstein v. Gontarz, 364 Mass. 800, 805 (1974). The only evidence that the defendant presented as to the circumstances of the accident was that the plaintiff had been stopped in a line of traffic approaching a stop sign, that the plaintiff then proceeded, and that the plaintiff then

Page 796

stopped her automobile again. This evidence, which the defendant concedes was "slight," was insufficient to raise for the jury the issue whether the plaintiff acted unreasonably. Compare Hladick v. Williams, 292 Mass. 470, 472-473 (1935) (driver stopped suddenly without explanation or warning after partially proceeding through traffic light).

b. The plaintiff's failure to wear her seat belt. The evidence that the plaintiff was not wearing her seat belt at the time of the accident also was insufficient to warrant submission to the jury on the issue of comparative negligence. The defendant in this case has failed to produce any evidence that the plaintiff's failure to wear her seat belt was causally related to her injuries. In the absence of any such evidence, the judge properly refused to submit the issue to the jury, as the jury would have been left to speculate as to whether the plaintiff's failure to wear her seat belt contributed to her injuries. See Zezuski v. Jenny Mfg. Co., 363 Mass. 324, 328 (1973); Landon v. First Nat'l Stores, Inc., 353 Mass. 756, 757 (1967). Because the defendant has not presented any evidence of causation tending to show that all or some of the plaintiff's injuries would have been averted or minimized if she had been wearing a seat belt, the judge properly refused to instruct the jury on this issue. Additionally, on this record, we need not address whether Massachusetts courts should recognize the so-called seat belt defense. See Breault v. Ford Motor Co., 364 Mass. 352, 358 n.12 (1973).[7] See also MacCuish

PX~MIL~045

---

[7] We note that, since our decision Breault, courts in a number of comparative negligence jurisdictions have adopted the so-called "seat belt defense." See, e.g., Waterson v. General Motors Corp., 111 N.J. 238, 241 (1988); Law v. Superior Court, 157 Ariz. 147, 157 (1988); Lowe v. Estate Motors Ltd., 428 Mich. 439, 444-445 (1987); Hutchins v. Schwartz, 724 P.2d 1194, 1198-1199 (Alaska 1986); Insurance Co. of N. Am. v. Pasakarnis, 451 So. 2d 447, 453 (Fla. 1984). Starting from the premise that automobile accidents, as well as the "second collision" between the occupant of a vehicle and some object are foreseeable, these courts have considered the seat belt issue in terms of whether a tort claimant's failure to wear a seat belt is relevant to whether that party has exercised reasonable care to avoid foreseeable injury. See Waterson, supra at 264-266; Law, supra at 152-155; Lowe, supra at 455; Schwartz, supra at 1198-1199; Pasakarnis, supra at 453. See also Smith v. Goodyear Tire & Rubber Co., 600 F. Supp. 1561, 1564 (D.Vt. 1985) (applying Vermont law).

Despite this growing trend, a number of courts continue to reject the seat belt defense. See, e.g., Wright v. Hanley, 182 W. Va. 334, 336 (1989); Swajian v. General Motors Corp., 559 A.2d 1041, 1046 (R.I. 1989); Clarkson v. Wright, 108 Ill. 2d 129, 133-134 (1985). Courts that have rejected the seat belt defense generally have reasoned that evidence of seat belt use is irrelevant because it does not pertain to any statutory or common law duty of care. See, e.g., Swajian, supra at 1045-1047.

In several jurisdictions the admissibility of evidence of seat belt use is governed by statute. See, e.g., Me. Rev. Stat. Ann. tit. 29, Section 1368-A (West 1978 & Supp. 1991) (barring evidence of nonuse of seat belt); Conn. Gen. Stat. Ann. Section 14-100a (4) (West 1987 & Supp. 1991) (same). Compare Iowa Code Ann. Section 321.445(4) (West 1985 & Supp. 1991) (disallowing evidence of "safety belt" use for purposes of establishing comparative negligence but allowing such evidence for purposes of mitigating damages up to five per cent); Colo. Rev. Stat. Ann. Section 42-4-236(7) (West 1990) (evidence of nonuse of seat belt admissible to mitigate damages for pain and suffering); Mich. Comp. Laws Section 257.710e(6) (West 1990) (evidence of nonuse of seat belt admissible for purposes of establishing negligence but such negligence shall not reduce damages by more than five per cent); but see Lowe v. Estate Motors Ltd., supra at 462-463 (1987) (Michigan statute does not apply to passengers in rear seat; seat belt defense adopted).

Page 797

v. Volkswagenwerk A.G., 22 Mass. App. Ct. 380, 386-387 (1986), S.C., 400 Mass. 1003 (1987).

Judgment affirmed.[8]

---

[8] While we consider the defendant's arguments to be unpersuasive, we do not consider them frivolous. Accordingly, the plaintiff's motion for attorney's fees, under Mass. R. A. P. 25, as amended, 378 Mass. 925 (1979), is denied.
End Of Decision

© Copyright 2020 Proprietors of the Social Law Library. All Rights Reserved.